IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 22, 2013

## RENITA DULANEY v. KARLA DAVIS, COMMISSIONER OF TENNESSEE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT and FEDERAL EXPRESS

Direct Appeal from the Chancery Court for Shelby County
No. CH-11-1193-1      Walter L. Evans, Chancellor

No. W2012-01020-COA-R3-CV - Filed April 24, 2013

This case involves a claimant's right to unemployment compensation benefits. After initially being awarded such benefits, claimant was denied benefits based upon a finding that she had refused to return to her former position after being medically released to do so. The chancery court, however, reinstated her benefits concluding that her due process rights had been violated when a telephone hearing–as opposed to a face-to-face hearing–was conducted. We reverse the chancery court's conclusion that the telephonic hearing violated claimant's due process rights and we dismiss the case.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Dismissed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, Warren Jasper, Senior Counsel, Nashville, Tennessee, for the appellant, Karla Davis, Commissioner, Department of Labor and Workforce Development

No appearance on behalf of the appellee, Renita Dulaney

**MEMORANDUM OPINION[1]**

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee states:

(continued...)

## I.  FACTS & PROCEDURAL HISTORY

Renita Dulaney was employed by Federal Express ("FedEx") from February 1998 to January 13, 2011, last working as a ramp agent.[2]  On March 14, 2010, Ms. Dulaney sustained a work-related injury when her "back went out[,]" and she was placed on leave from March 23 to August 11, 2010 during which time she received workers' compensation benefits.  On July 12, 2010, Ms. Dulaney was examined by a physician[3] who stated in an "Employment Report" that she could return to work immediately subject to certain physical restrictions:

> The patient is restricted to 5 pounds continuous lifting, 10 pounds intermittent lifting and 2 hours of continuous sitting, 2 hours continuous standing, 2 hours continuous walking; and restricted from climbing, kneeling, bending, stooping, twisting, push/pull, reaching and lifting over the shoulder activity, driving at work and operating machinery.  There are no other restrictions.

Ms. Dulaney apparently returned to work on August 11, 2010 subject to these restrictions.

Later in August 2010, the physical restrictions were lifted by an employer-selected-physician, and Ms. Dulaney attempted to return to full duty.  However, she continued to complain of difficulty in performing her duties as a ramp agent, and she was again placed on leave pending another employer-selected-physician evaluation.  The physician again released Ms. Dulaney to full-duty on September 3, 2010.  However, during this time period, Ms. Dulaney contacted her primary physician, Dr. Leal, who, on September 9, 2010, provided a ten-day work "Excuse Slip" covering early to mid-September due to "severe lower back

---

[1](...continued)
This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]According to the Tennessee Department of Labor and Workforce Development, Employment Security Division, Appeals Tribunal, Ms. Dulaney's job as a ramp agent required her to "push and pull items."

[3]It is unclear whether this physician was employee-selected or employer-selected.

pain[.]" According to Ms. Dulaney,[4] Dr. Leal arranged for her to see a specialist, but the specialist refused to see her after learning that she was involved in a workers' compensation case.

In a September 8, 2010 letter from FedEx, Ms. Dulaney was notified that she had been released to return to regular duty work by the employer-selected-physician, and that she could either: (1) return to her former position as a ramp agent effective September 11, 2010; (2) take a 90-day personal leave of absence during which time she could apply for other positions with the company for which she was qualified; or (3) voluntarily resign her employment with FedEx. Ms. Dulaney selected the 90-day leave option, and during this period she applied for three positions. However, FedEx determined that Ms. Dulaney did not meet the minimum qualifications for two of the positions and that her application packet was incomplete regarding the third position. Thus, Ms. Dulaney did not secure another position within the company.

In November 2010, Ms. Dulaney self-arranged an appointment at The Wootton Clinic and Medical Center, where a nurse practitioner supplied a "Work Release" for the period of December 6, 2010 to January 2, 2011 due to her being treated for "lumbar IVD and sciatica[.]" However, the Work Release indicated that Ms. Dulaney could return to full duty on January 3, 2011.[5] Ms. Dulaney never returned to work, and on January 13, 2011, FedEx terminated Ms. Dulaney's employment.

On January 27, 2011, Ms. Dulaney filed a claim for unemployment benefits, and FedEx responded by contending that Ms. Dulaney had voluntarily terminated her employment and requesting a determination of her eligibility for such benefits by the Tennessee Department of Labor and Workforce Development (the "Agency"). On February 22, 2011 the Agency's Division of Employment Security rendered its "Agency Decision" in which it approved Ms. Dulaney's claim. The Agency found that Ms. Dulaney was unable to continue performing her "usual work" and that FedEx had failed to offer her work which she could physically perform.

On March 8, 2011, FedEx appealed the Agency Decision to the Agency's Appeals Tribunal, again claiming that Ms. Dulaney had voluntarily terminated her employment by declining to return to her former position after being released to full duty. FedEx requested a telephone hearing before the Appeals Tribunal.

---

[4]This information is taken from the transcript of the April 18, 2011 hearing before the Appeals Tribunal.

[5]The Work Release erroneously lists two of the dates as 2010 rather than as 2011.

On April 6, 2011, the Appeals Tribunal sent Ms. Dulaney a "Notice of Telephone Hearing" scheduled for April 18, 2011. The hearing was held telephonically as scheduled, with Ms. Dulaney representing herself. On April 19, 2011, the Appeals Tribunal issued its "Decision of Appeals Tribunal" finding that Ms. Dulaney had failed to return to work as a ramp agent although she had been medically released to do so, and concluding that she had not left her employment for good cause and therefore was not entitled to unemployment benefits under Tennessee Code Annotated section 50-7-303(a)(1).[6]

On April 26, 2011, Ms. Dulaney appealed the decision of the Appeals Tribunal to the Agency's Commissioner's Designee,[7] and she requested a hearing to present additional evidence. The Commissioner's Designee denied Ms. Dulaney's request for an additional hearing, finding that "none of the[] documents would affect the outcome of th[e] case," and it affirmed the decision of the Appeals Tribunal–that Ms. Dulaney was not eligible for unemployment benefits because she had failed to "accept her former job when it was offered to her after being medically released to return to work."

Ms. Dulaney filed a Petition for Judicial Review in the Shelby County Chancery Court on July 19, 2011, claiming a myriad of errors by the Commissioner's Designee.[8] Following

---

[6]Tennessee Code Annotated section 50-7-303(a)(1)(A) disqualifies a claimant from receiving benefits "[i]f the administrator finds that the claimant has left the claimant's most recent work voluntarily without good cause connected with the claimant's work."

[7]Ms. Dulaney filed her appeal with the Agency's Board of Review, which has since been replaced by the Commissioner's Designee.

[8]Ms. Dulaney argued that the decision of the Commissioner's Designee should be reversed because it was "in violation of constitutional or statutory provisions, made upon unlawful procedure, arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion, and unsupported by evidence that is both substantial and material in light of the entire record." Specifically, Ms. Dulaney claimed:

> The decisions of the [Commissioner's Designee] are in violation of constitutional or statutory provision and made upon unlawful procedure in that the board made its decisions in a fashion that denied petitioner her right to due process of law. Pursuant to Tenn. Code Ann. section 50-7-304, the [Commissioner's Desginee] had the options of deciding the case bas[ed] on the evidence previously submitted or directing the taking of additional evidence. The [Commissioner's Designee] did neither. Instead, without directing the taking of additional evidence, it relied upon information not in the record in making its decisions. . . . it relied upon a letter and attachments mailed to it by Federal Express without providing any opportunity for petitioner to confront the statements in those documents, it relied upon uncorroborated hearsay, it relied upon what it characterized as the heated tone of a letter

(continued...)

a hearing on February 14, 2011,[9] the chancery court entered its Order on Judicial Review in which it reversed the decision of the Commissioner's Designee based upon its finding that Ms. Dulaney had been "deprived . . . of adequate due process and the ability to confront and examine the credibility of the witnesses against her" when she "was denied a face to face in-person hearing, and instead only participated in a telephone hearing before the . . . Appeals Tribunal." Based upon this finding, the chancery court awarded Ms. Dulaney unemployment compensation benefits.

The Tennessee Department of Labor and Workforce Development timely appealed to this Court. Neither Ms. Dulaney nor FedEx filed a brief in this case, and by Order of March 11, 2013, the matter was submitted for decision upon the record and the Agency's brief.

## II. ISSUES PRESENTED

The Agency presents the following issues for review:

1.      Whether the trial court erred in its determination that Ms. Dulaney was entitled to an "in person" hearing; and

2.      Whether there is substantial and material evidence in the record to support the Agency's finding, and a reasonable basis in law to support the Agency's conclusion that Ms. Dulaney voluntarily quit her job without good cause.[10]

For the following reasons, we reverse the chancery court's conclusion that the telephonic hearing violated Ms. Dulaney's due process rights and we dismiss the case.

---

[8](...continued)
written to the [Commissioner's Designee] by petitioner, it improperly and expressly placed the burden of proof on the petitioner, it failed to transcribe the Appeals Tribunal hearing and review the transcript as required by Tenn. Code Ann. section 50-7-304, it failed to rely upon the recorded testimony from the Appeals Tribunal. It failed to allow petitioner the right to voice her rights in public."

[9]Neither a transcript nor a statement of the evidence from this hearing is included in the record on appeal.

[10]Ms. Dulaney did not file an appellate brief.

## III. DISCUSSION

As stated above, the chancery court reversed the decision of the Commissioner's Designee–that Ms. Dulaney was not entitled to unemployment benefits–because it concluded that her due process rights were violated when the Appeals Tribunal hearing was conducted telephonically as opposed to face-to-face. The court's explanation, in its entirety, is as follows:

> It appears to the Court, and the Court finds, that the Petitioner was denied a face to face in-person hearing, and instead only participated in a telephone hearing before the Department of Labor & Workforce Development Appeals Tribunal. This deprived the Petitioner of adequate due process and the ability to confront and examine the credibility of the witnesses against her.

On appeal, the Agency contends that an in-person hearing is not necessarily required to avoid due process pitfalls, and we agree. The Tennessee Employment Security Law "guarantee[s] a claimant the right to a fair hearing after denial of a claim for unemployment benefits." *Simmons v. Traughber*, 791 S.W.2d 21, 24 (Tenn. 1990) (citing Tenn. Code Ann. § 50-7-304(c)(1)). However, section 50-7-304(f) specifically permits hearings before the Appeals Tribunal or the Commissioner's Designee to be conducted telephonically:

> Notwithstanding § 4-5-312(c)[11] or any other provision to the contrary, the appeals tribunal and the commissioner's designee may, for good cause, hold all or part of the hearing by telephone conference. In determining good cause, the appeals tribunal and commissioner's designee shall consider the wishes of the parties and such factors as the physical security risk to the participants or the department's staff, the travel distance to the hearing location for either or both parties, the relative hardship or convenience to the parties, the complexity of the issues and any other factor relevant to having a fair hearing.

Moreover, in a nearly-identical case, this Court rejected a claimant's argument that a telephonic hearing violated due process. In *Armstrong v. Magill*, No. W2003-00207-COA-R3-CV, 2004 WL 1462631 (Tenn. Ct. App. June 29, 2004), the unemployment benefits claimant appealed the initial denial of unemployment benefits to the Appeals Tribunal. *Id.* at *1. The appeal form contained a box in which the claimant could mark "telephone" or "in

---

[11]The Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-312(c) provides:
In the discretion of the administrative judge or hearing officer and agency members and by agreement of the parties, all or part of the hearing may be conducted by telephone, television or other electronic means, if each participant in the hearing has an opportunity to participate in, to hear, and, if technically feasible, to see the entire proceedings while taking place.

person" to indicate her preference for the upcoming appeal hearing. *Id.* The claimant checked no box, and she was sent a "Notice of Telephone Hearing" which, beyond notifying her that a telephone hearing had been scheduled, instructed her that "IF YOU DO NOT AGREE TO A TELEPHONE HEARING, contact the Appeals Tribunal immediately and be prepared to appear in person . . . ." *Id.* Claimant did not contact the Appeals Tribunal prior to the hearing. *Id.* During the telephonic hearing, claimant questioned "why the hearing had to be over the telephone[,]" but she seemed to acquiesce in the procedure and the hearing proceeded without objection. *Id.*

The Appeals Tribunal affirmed the Agency's decision to deny the claimant unemployment benefits, and the claimant appealed to the Board of Review without objecting to the Appeals Tribunal hearing having been conducted by telephone. *Id.* at *2. Before the chancery court, the claimant argued that the telephonic hearing violated her due process rights, but the chancery court disagreed.

On appeal to this Court, the claimant argued, among other things, that the telephonic hearing had violated her due process rights. *Id.* at *5. At the outset, we noted that the claimant had failed to properly object to the telephonic hearing, but we concluded that even if she had properly objected, that no due process violations had occurred. *Id.* at *6. Specifically, we found that the claimant could have chosen an in-person hearing by checking the appropriate box on her appeal application or that she could have later-requested an in-person hearing by contacting the Appeals Tribunal upon receipt of the "Notice of Telephone Hearing." Moreover, we noted that the hearing officer was under no duty to reschedule the hearing when the claimant questioned why the hearing was being conduct via telephone, but then acquiesced to the procedure. Ultimately, we stated that "[u]nder these circumstances, we cannot conclude that [the claimant] was unfairly denied the opportunity to have an in-person hearing." *Id.*

As in *Armstrong*, in the instant case, Ms. Dulaney received a notice clearly styled "Notice of Telephone Hearing" informing her of the hearing scheduled before the Appeals Tribunal. The notice included the telephone numbers of the Agency, Ms. Dulaney, and FedEx, and it instructed Ms. Dulaney to notify the Appeals Tribunal if her telephone number was not listed, or if it was incorrect. Additionally, the notice specifically stated, "If your hearing is scheduled by telephone and you want an in-person hearing, please contact the Appeals Tribunal immediately."

The record before us contains no indication that Ms. Dulaney voiced any objection to a telephonic hearing *prior to* the hearing. Moreover, from the transcript of the Appeals Tribunal hearing, it further appears that she in no way questioned or challenged the hearing being conducted via telephone *during* the hearing, itself. Instead, it appears that she did not

request an in-person hearing until *after* the Appeals Tribunal rendered its adverse decision. Under the circumstances of this case, we cannot conclude that Ms. Dulaney was unfairly denied the opportunity to have an in-person hearing. The judgment of the chancery court is reversed and the case is dismissed.[12]

## IV.  CONCLUSION

For the aforementioned reasons, we reverse the chancery court's conclusion that the telephonic hearing violated Ms. Dulaney's due process rights and we dismiss the case. Costs of this appeal are taxed to Appellee, Renita Dulaney, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[12]We find it unnecessary to address the second issue raised by the Department, for which it simply seeks an affirmance, and for which Ms. Delaney did not seek appellate relief.